UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK            FOR PUBLICATION
------------------------------------------------------------------
In re

Performance Transportation Services, Inc., *et al*            Case No. 07-4746 K

                              Debtor
------------------------------------------------------------------
Mark S. Wallach, Esq., Chapter 7 Trustee of
Performance Transportation Services , Inc., et al.

                              Plaintiff
            -vs-                                               AP No. 09-1108 K

Ford Motor Company

                              Defendant
------------------------------------------------------------------
Mark S. Wallach, Esq., Chapter 7 Trustee of
Performance Transportation Services, Inc., et al.

                              Plaintiff
            -vs-                                               AP No. 09-1190 K

Ford Motor Company

                              Defendant
------------------------------------------------------------------
Mark S. Wallach, Esq., Chapter 7 Trustee of
Performance Transportation Services, Inc., et al.

                              Plaintiff
            -vs-                                               AP No. 09-1244 K

Ford Motor Company

                              Defendant
------------------------------------------------------------------

Janet G. Burhyte, Esq.
Gross, Shuman, Brizdle & Gilfillan, P.C.
465 Main Street, Suite 600
Buffalo, NY 14203

Attorney for Plaintiff

Marc N. Swanson, Esq.
Ronald A. Spinner, Esq.
Miller Canfield Paddock & Stone, PLC
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226

Attorneys for Ford Motor Company

Kevin Tompsett, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Attorney for Ford Motor Company

As refined at oral argument, this is a motion by Defendant Ford Motor Company under Rules 12(b)(6) and 12(c) to grant "judgment on the pleadings" in two preference complaints under a very unusual fact pattern, and perhaps an unprecedented defense arising out of that fact pattern.[1]

The affiliated Debtors here, in the aggregate, constituted one of the largest haulers of new cars in North America, picking up new vehicles from original equipment manufacturers

---

[1] The actual procedural posture is more convoluted and, to an extent, obscure. The attack actually is upon two proposed Amended Complaints contained in a Motion by the Trustee to re-plead after this Court granted leave to the Trustee to seek to re-plead. In other words, it is complicated. But for purposes of this decision the Court deems the proposed Amended Complaints to be the Complaints, and deems the Defendant's Motions to Dismiss the original Complaints to apply to the "Amended Complaints."

(OEMs) and delivering them to railroad yards, dealerships, etc. (They will be referred to here as "the Debtor," as if they were one entity.) While the vehicles were in the possession of the Debtor for hauling, the Debtor was responsible for any damage to the vehicles. In a different industry, what the Debtor might owe to the "shipper" for damage to the vehicles while in the Debtor's possession might simply be treated as "offsets" when the shipper pays for the hauling services after delivery (whether as a setoff with regard to that particular shipment or as to future shipments ordered by the shipper). But in this particular industry, the hauler (such as the Debtor) writes checks to the shipper for confirmed damages to vehicles while in transit. Consequently, payments made by the hauler to the OEM for damages to vehicles while in shipment are payments on "antecedent debts" owed by the hauler to the OEMs. Subsequent payments by the OEM to the hauler are simply payments for hauling services rendered by the hauler, without regard to what the hauler might owe to the OEM at any particular moment because of damaged vehicles.

One of the affiliated debtors here is "E. and L." In the E. and L. case, the Trustee seeks return of $258,507.66 paid during the preference period to Ford Motor Company for damages to vehicles. During that same period, Ford ordered over $16.4 million in new hauling business to be performed by E. and L. Those services were performed by the Debtor, and paid-for by Ford.

Ford argues that given the magnitude of those orders, there simply had to be "new value" provided to E. and L. in excess of the challenged quarter-million dollars in preference claims; "The preference claims represent less than 1.6% of the business Ford provided." [Ford's reply to the Trustee's Letter Brief Regarding Burden of Proof.]

(In the Hadley case (another affiliate), the Debtor paid $129,093.61 to Ford during the 90-day period, but Ford bought $8,544.511 in new service from the Debtor, services that were fully performed by the Debtor and paid-for by Ford.)

When asked on the record in Court how placing new customer orders with the Debtor and receiving full performance upon those orders from the Debtor could fall within the statutory definition of "new value" (which is "money or monies worth in goods, services, or new credit, . . . but does not include an obligation substituted for an existing obligation," [11 U.S.C. § 547(a)(2)]), Ford's response was right to the point. We provided "money." Ford purchased over $16 million in new services from E. and L. during the preference period and paid for those services. Eight and a half million in Hadley. That revenue stream, Ford argues, must have provided "new value" to E. and L. and Hadley based on several possible measures, including (but not limited to) the value of the improved cash flow itself, the value of profit upon those new transactions, and the value of maintaining the Debtor's reputation for full compliance with the industry standard as to accepting responsibility for damage to vehicles, without which the Debtor would lose business orders from <u>all</u> OEMs, in favor of the Debtor's competitors.

It appears to be undisputed that no published decision addresses such an unusual fact circumstance and consequent defense.

Typically, where a customer of a debtor is sometimes also a creditor of the debtor, the matter would be dealt with by setoffs and would be governed by 11 U.S.C. § 553, not 11 U.S.C. § 547. That is not the case here, and so the focus is § 547. Ford cites case authority for the proposition that "new value" is not limited to post-preference extensions of new <u>credit</u>, such

as new <u>lending</u> or <u>delivery of goods on credit</u>. Rather, for example, forbearing from collecting on other debts after receiving a preferential satisfaction of one debt might constitute "new value." (See, e.g. *In re Buffalo Auto Glass*, 187 B.R. 451 (Bankr. W.D.N.Y. 1995).) And "new value" might also flow to a debtor when a principal of the debtor who received a preferential payment subsequently signs a personal guaranty that enables the debtor to obtain new borrowing from a lender. (See, e.g. *In re Kumar Bavishi & Assoc.*, 906 F.2d 942 (3rd Cir. 1990).)

The Trustee argues that because the Debtor filled all the new orders at the contract price, Ford was fully compensated for what it paid the Debtor during the preference period and that, consequently, Ford's argument sounds somewhat like an argument that Ford somehow was overpaying for the services provided by the Debtor, with an expectation of receiving a "new value" defense or of eventual, non-avoidable repayment of the excess. In other words, the Trustee argues, the new business was a "wash," and to allow a "new value" defense essentially allows Ford to "double dip" by receiving "full value" for the new orders it placed and were satisfied, <u>plus</u> a "new value" defense as to preferences.[2]

Ford acknowledges that it must carry the burden of proof on the affirmative defense of "new value," [11 U.S.C. § 547(g)] and that on a Rule 12(b)(6) or 12(c) motion the Court must permit the Trustee to enjoy all "reasonable inferences" arising from the facts alleged in the complaint (which must be accepted as true). However, Ford argues that the Second Circuit

---

[2]At oral argument, Ford characterized this last argument raised by the Trustee as raising the question of whether "new value" must "remain unpaid" in order to be credited as such. That is an issue upon which courts have disagreed. Under the present posture of this case, this Court need not address that question at this time, but may have to address it at a later stage of these proceedings.

has instructed this Court not to "jettison common sense." Citing the case of *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2nd Cir. 2011), Ford argues that the Trustee is not entitled to inferences that are "<u>un</u>reasonable."

Ford misinterprets <u>L-7</u>, however. In purporting to quote from the Second Circuit decision in *L-7*, Ford actually misquotes the Second Circuit's statements. Ford "block-indents" the following as a purported representation of what the Second Circuit said:

> [O]nly a Complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be **a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.** The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Plausibility thus depends on a host of considerations: the full factual picture presented by the Complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable. [Emphasis Ford's].

The actual quote from the Second Circuit is this:

> In *Ashcroft v. Iqbal*, the Supreme Court set forth a "two-pronged approach" to evaluate the sufficiency of a <u>Complaint</u> . . . . "First, although a court must accept as true all of the allegations contained in a <u>Complaint</u>, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,

only a <u>Complaint</u> that states a plausible claim for relief survives a motion to dismiss, and determining whether a <u>Complaint</u> states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . The plausibility standard is not akin to a probability requirement, but it asks for mor than as sheer possibility that a defendant has acted unlawfully." . . . Plausibility thus depends on a host of considerations: the full factual picture presented by the <u>Complaint</u>, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable. . . ." [Emphasis added. Authorities omitted.]

The difference is this. The Second Circuit's quotation from *Iqbal* is the support for its statement that "<u>plausibility</u> thus depends on a host of considerations." "Plausibility" is the *Iqbal* standard for assessing the sufficiency of the allegations of a <u>complaint</u>. Consequently, the Second Circuit's statement says nothing in support of Ford's proposition that this Court is required or permitted under Rule 12(b)(6) and 12(c) to render a determination in favor of a preference defendant based on the "plausibility" <u>of a defendant's affirmative defense contained in an Answer.</u>

There are no inferences raised by the Trustee's Complaint that Ford can point to as being "unreasonable." Rather, Ford asks this Court to determine that the strength of its affirmative defenses is such that the Trustee is being "unreasonable" in not voluntarily dismissing the action, or at least settling on terms favorable to Ford. The notion seems to be that this Court

is permitted to decide a case on "proffers" in a Rule 12 context.

What Ford seeks in that regard might someday persuade a higher court, or the U.S. Supreme Court's Advisory Committee on Rules, that such would be sound policy (though, to this Court, it seems that such a policy might actually <u>dis</u>courage settlements).[3] But there is no authority for Ford's argument in this Court at this time, and this Court declines to provide such authority.

The present motion is denied without prejudice to a summary judgment motion under Rule 56 if discovery is now complete or when discovery becomes complete. (This ruling obviates the need for the Court to address Ford's arguments regarding what documents or affidavits this Court may consider in ruling upon a Rule 12(b)(6) or Rule 12(c) motion.)

These adversary proceedings are restored to the calendar on August 15, 2012 at 11:30 a.m., for further scheduling.

SO ORDERED.

Dated:      Buffalo, New York
            July 16, 2012

                                        s/Michael J. Kaplan
                                        _____
                                        U.S.B.J.

---

[3] This writer, when practicing law in the 1970s, was an arbitrator in the Rochester, NY City Court. What Ford argues for is exactly what we did - - weigh the proffers of evidence. Arbitration was mandatory, but the arbitration panel's decision was not binding. It had a high success rate in leading to settlements. What Ford seeks here amounts to "binding arbitration" under its interpretation of Rules 12(b)(6) and 12(c), or at least a form of "summary adjudication." This writer stands ready to serve that role if so ordered by statute or Rule. In the meantime, this writer shall be merely a "judge."